FILED
**UNITED STATES DISTRICT COURT** OFFICE
**FOR THE DISTRICT OF MASSACHUSETTS**

THE UNITED STATES OF AMERICA,

*ex rel.* DOUGLAS BERMAN,

    Plaintiffs,

v.

MERRIMACK COLLEGE,

    Defendant.

**CIVIL ACTION NO.**

**FILED *IN CAMERA*
and UNDER SEAL**

**JURY TRIAL DEMANDED**

## FALSE CLAIMS ACT *QUI TAM* COMPLAINT

### NATURE OF THE ACTION

1.    This is an action brought on behalf of the United States of America by Plaintiff Douglas Berman (hereafter referred to as "Relator" or "Mr. Berman") against Defendant Merrimack College ("Merrimack" or "Defendant") pursuant to the *Qui Tam* provisions of the Civil False Claims Act, 31 U.S.C. §§ 3729-33 ("Federal FCA" or "FCA").  Pursuant to 31 U.S.C. § 3730(b)(2), this *qui tam* action is brought *in camera* and under seal.

2.    The Relator is a current Vice President of Merrimack College, a small liberal arts college north of Boston, Massachusetts.  Mr. Berman was first hired by Merrimack only nine moths ago, in July 2011, as its Assistant Vice President in charge of the Financial Aid, Bursar's and Registrar's Offices.  His job responsibilities included the management and supervision of a staff of professionals involved in a variety of issues affecting student life, including financial aid, student retention, systems organization, and strategic planning.  His title and responsibility

changed abruptly, however, after he spoke up internally in the fall of 2011 (only weeks after starting at Merrimack) about a serious fraud problem that he became aware of and that is the basis for this lawsuit.

3. His current position is Assistant Vice President for Business Processes and Project Management, but as of mid-November 2011 the College has no longer offered him a physical office in which to work and has given him no meaningful work to perform, despite his repeated requests for work. Recently, he has been informed that Merrimack now intends to eliminate his position in the near future, thereby terminating his employment.

4. Defendant Merrimack College is located in North Andover, Massachusetts. It is a "selective, independent, four-year Catholic college in the Augustinian tradition," as the College describes itself on its website. It was founded in 1947, in part to service the needs of returning military veterans from World War II. It currently enrolls approximately 2000 students, and offers degrees in liberal arts, business, science and engineering, and education.

5. The allegations of this Complaint arise from the Relator's first-hand knowledge of the unlawful practices of the Defendant with respect to false and fraudulent submission of student loan information to the United States Department of Education and misappropriation of and misuse of student Social Security numbers. Through the course of his duties, Relator became aware that for a period of years, Defendant and certain of its employees and agents routinely forged student signatures on promissory notes as a means of securing federally guaranteed student loans, without the students being aware that Defendant had applied for the loans on their behalf. Social Security numbers were also misused as part of the fraudulent loan applications. As part of his new job at Merrimack, Relator became aware of these issues because of regular complaints from college alumni and/or their parents, who were calling and writing to

- 2 -

complain of notices of loan delinquency notices that made no sense to them. When Merrimack was slow to correct the problem and alert the appropriate authorities, Relator voluntarily contacted the Department of Education to inform the government of the fraud, based on his direct and independent knowledge of the underlying facts.

6.     As a direct, proximate and foreseeable result of Defendant's fraudulent course of conduct set forth herein, Defendant knowingly caused the submission of at least hundreds of false or fraudulent statements, certifications, and claims to government programs for the funding of student loans, dating as far back as 2002.

7.     Defendant's fraudulent conduct has caused damage to the federal fisc, as well as financial and emotional harm to hundreds of its own alumni and alumni families, who have incurred debts of which they were unaware and negative impact in many cases on their credit ratings. Defendant's conduct in removing Relator from his position at the college, re-designating him to a different job with no office and no responsibility has also violated the anti-retaliation provisions of the FCA, by punishing him for engaging in "protected activity" under the law, and causing injury to his career.

8.     By these actions, Merrimack has committed multiple violations of the FCA, as detailed further in the paragraphs below.

## JURISDICTION AND VENUE

9.     This Court has jurisdiction over this action under the False Claims Act ("FCA") causes of action pursuant to 28 U.S.C. §§ 1331, 1345, and 31 U.S.C. §§ 3732, the last of which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§ 3729 and 3730. This Court also has jurisdiction over the Relator's personal claim for retaliation, pursuant to 28 U.S.C. § 3730(h).

10.    Under 31 U.S.C. § 3730(e)(4)(A), there has been no statutorily relevant public disclosure of substantially the same "allegations or transactions" alleged in this Complaint. Even to the extent there has been any such public disclosure, Relator meets the definition of an original source, as that term is defined under 31 U.S.C. § 3730(e)(4)(B). Specifically, Relator voluntarily disclosed to the Government the information upon which allegations or transactions at issue in this complaint are based prior to any purported public disclosure under 31 U.S.C. § 3730(e)(4)(A). Alternatively, Relator has knowledge that is independent of and materially adds to any purported publicly disclosed allegations or transactions, this Complaint is based on Relator's direct and independent knowledge as an employee of Defendant, and Relator voluntarily provided the information to the Government before this Complaint was filed. Relator therefore qualifies as an "original source" of the allegations in this Complaint such that the so-called public disclosure bar set forth at 31 U.S.C. § 3730(e)(4) is inapplicable.

11.    Venue is appropriate as to the Defendant in that the Defendant can be found, reside and/or transact business in this judicial district, and/or acts proscribed by 31 U.S.C. § 3729 have been committed by the Defendants in this judicial district. Therefore, venue is proper within the meaning of 28 U.S.C. § 1391(b) and (c), and 31 U.S.C. § 3732(a).

## THE PARTIES

### The Relator

12.    Mr. Berman resides in Boston Massachusetts. He has been in higher education administration since 1992, and has taken courses toward a master's degree in higher education administration. He has had an exemplary career, working at a series of top universities and graduate programs, including Columbia University, Princeton University, Stanford University, and Harvard Law School. His most recent position before Merrimack was the Registrar of

- 4 -

Harvard Law School. He has been involved professionally in higher education administration
for 19 years and is intimately familiar with financial and loan issues in the higher education
context. A copy of his resume detailing his years of experience and accomplishments in the
industry has been provided to the government as part of his prior disclosures.

## The Defendant: Merrimack College

13.     Merrimack College is located in North Andover, Massachusetts. It is a "selective,
independent, four-year Catholic college in the Augustinian tradition," as the College describes
itself on its website. It was founded in 1947, in part to service the needs of returning military
veterans from World War II. It currently enrolls approximately 2000 students, and offers
degrees in liberal arts, business, science and engineering, and education.

## THE FEDERAL FALSE CLAIMS ACT

14.     The federal False Claims Act ("FCA"), 31 U.S.C. § 3729(a)(1)(A), makes
"knowingly" presenting or causing to be presented to the United States any false or fraudulent
claim for payment or approval a violation of federal law for which the United States may recover
three times the amount of the damages the government sustains and a civil monetary penalty of
between $5,500 and $11,000 per claim for claims made on or after September 29, 1999.

15.     The FCA, 31 U.S.C. § 3729(a)(1)(B), makes "knowingly" making, using, or
causing to be used or made, a false record or statement material to a false or fraudulent claim, a
violation of federal law for which the United States may recover three times the amount of the
damages the Government sustains and a civil monetary penalty of between $5,500 and $11,000
per claim for claims made on or after September 29, 1999.

16.     The FCA, 31 U.S.C. § 3729(a)(1)(G), makes any person who knowingly makes,
uses, or causes to be made or used, a false record or statement material to an obligation to pay or

transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government liable for three times the amount of damages the Government sustains and a civil monetary penalty of between $5,500 and $11,000 per claim for claims made on or after September 29, 1999.

17.     The FCA defines a "claim" to include any request or demand, whether under a contract or otherwise, for money or property which is made to a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested or demanded, or if the Government will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested.  31 U.S.C. § 3729(b)(2).

18.     The FCA, 31 U.S.C. § 3729(b)(1) provides that "(1) the terms 'knowing' and 'knowingly' – (A) mean that a person, with respect to information – (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information; and (B) require no proof of specific intent to defraud."

19.     The FCA, 31 U.S.C. § 3729(b)(4) provides that "(4) the term 'material' means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property."

20.     The FCA also provides for a private cause of action for persons injured by retaliation in the workforce for having engaged in protected activity under the statute.  31 U.S.C. § 3730(h).  This provision provides relief in the form of reinstatement or "front pay," double damages for lost back pay, interest on lost back pay, attorney's fees, and compensation for any special damages caused by the retaliatory conduct.

- 6 -

## DEPARTMENT OF EDUCATION LOAN PROGRAMS

21.     Merrimack College states the following with respect to federal "Perkins" loans:

> **FEDERAL PERKINS LOAN:** The Federal Perkins Loans are
> funded by Merrimack College and the federal government. These
> awards may be available to students with financial need. Loan
> amounts range from $500 to $5,500 per year. These loans require
> no principal or interest payments while the student is pursuing a
> degree. Ordinarily, a repayment period of ten years is permitted at
> an interest rate of 5% on the unpaid balance beginning nine months
> after graduation. Funding is limited. There is no loan application
> but students will sign a promissory note provided by the college.

This statement is consistent with the information disseminated by the federal government. The

Perkins loan process is streamlined (at least by comparison to private bank loans), with the

college or university able to apply for the Perkins loan electronically on the student's behalf,

requiring only that he or she sign a promissory note, promising to repay according to the terms of

the program. On information and belief, most colleges and universities receive the Perkins loans

proceeds directly from the government to satisfy the student's tuition obligation, and then the

loan is carried interest-free until after the student graduates.

22.     For purposes of the False Claims Act, it is the college or university that actually

submits the claim and receives the funds, even though it is the student who receives the

theoretical benefit from the funding.

## FACTS AND ALLEGATIONS

23.     Approximately 90% of Merrimack students receive some form of financial aid.

As is typical of many colleges, students are often offered a "package" of financial aid, that can

include a blend of outright grants from the college (e.g., merit scholarships), loans from the

college, and loans from private sources and governmental sources. A full list of the types of aid

Merrimack offers may be found at:

http://www.merrimack.edu/admission/financial_aid_and_scholarships/types_of_aid/.

- 7 -

24. Merrimack competes for students with other colleges, and one of the ways it competes is by trying to offer more attractive aid packages to students than its competitors can offer. However, like any college, Merrimack does not have an unlimited budget with which to work. All college financial offices seek to blend the available sources of funding in a way that will attract students whose acceptance decision may be determined by the attractiveness of the aid package.

25. Mr. Berman started work at Merrimack College on July 18, 2011, as Assistant Vice President in charge of the Financial Aid Office, among other offices. Shortly after arriving, Mr. Berman began receiving phone calls from alumni and parents, inquiring about Perkins loans that they had not known they had applied for as students. Many of them were confused and irate, as they were now being told that they were in default or otherwise delinquent. Mr. Berman has retained several examples of these complaints, in the form of emails to him and/or his colleagues, seeking advice and asking for relief from the College.

26. Mr. Berman began to investigate the matter by asking questions of his staff, which included approximately five direct reports. He spoke to a loan officer in the Financial Aid Office, and asked her to help him research the student accounts. She pointed out where Perkins Loan applications had been falsely applied to students' accounts. She also informed Mr. Berman that this had been a regular practice in the office for over a decade *and that the Financial Aid office had knowingly forged promissory notes.* Berman also learned that students' Social Security numbers had been misused in the process of administering these fraudulent loans. Berman told his supervisor at the time, Kristin Greene, about what he had learned, and then told Mark Vadala, the CFO of the College. In his conversation with Mr. Vadala, Mr. Berman expressed his opinion that this problem should be reported to authorities. Mr. Vadala indicated

- 8 -

that he was aware of the issue, as was the senior leadership of the College. He recommended that Mr. Berman speak with the College's in-house lawyer but gave Mr. Berman no indication that he was going to take action on the issue. Mr. Berman did in fact later speak with the College's in-house lawyer, Alexa Abowitz.

27. Understanding that these issues needed to be addressed promptly, and convinced that the College was responding neither adequately nor appropriately, Mr. Berman then contacted the U.S. Department of Education Inspector General's Office, on September 19, 2011. He spoke with Matthew Wardle, a Special Agent, detailing everything Mr. Berman had recently learned. The agent thanked him for the information. Mr. Berman also sent Agent Wardle an email on September 19, confirming in summary fashion the substance of the conversation. Ten days later, on September 29, 2011, federal agents from the U.S. Department of Education and the Social Security Administration came to Merrimack College to interview several people, including Mr. Berman, about suspected Perkins Loan fraud. Mr. Berman answered the questions asked of him truthfully, consistent with his previous interview with Agent Wardle, but the interview was terminated prematurely by a outside lawyer for the College who sat in on the interview and became apparently became uncomfortable with the substance of Mr. Berman's statements to investigators.

28. In mid-October, 2011, a woman named Janet Hunter from a consulting firm known as Financial Aid Services appeared at the College to do an assessment of the Financial Aid Office, apparently at the College's request. Mr. Berman met with her for several hours during that time, answering a variety of questions about the administration of the College. Approximately two weeks later, on October 31, 2011, the College terminated, with no notice to Mr. Berman, all of Mr. Berman's direct reports in the Financial Aid and Bursar's Offices. Mr.

Berman was not invited to the meeting where Jeff Doggett, Chief of Staff to the President, informed the rest of the Enrollment Management division of these actions.

29.     On Tuesday, November 8, 2011, Mr. Berman was summoned to the Merrimack Club to meet with President Hopey, President of the College. President Hopey asked Mr. Berman questions about his role at the College and his experience. Later that week, Berman was asked to meet with General Counsel Abowitz, and President Hopey together. At that meeting, he was informed that he (Berman) would now be reporting to the General Counsel. A new job description was to be created, and Mr. Berman was to assume the new title of Assistant Vice President for Business Processes and Project Management. He was given no office on the campus, however, forcing him to "work" in isolated fashion from home since November 2011. Despite repeated requests for work to do, no meaningful work has been given to him to perform, and he has recently been informed that the College intends to terminate his position and end his employment there.

30.     At approximately this same time, in late 2011, the College made a public announcement of organizational changes in the Purchasing Department, in which it announced the changes and the reasons for them. There was no corresponding announcement of Mr. Berman's new title, or his job change, his new reporting arrangement, or reasons for any of the changes to his status as a high-level administrator. The changes to Mr. Berman's status, in contrast, were made quietly, with no public explanation at all. Shortly after this time, Mr. Berman noticed that he stopped being invited to routine work meetings to which he would normally have been invited. Although the College has continued to pay him, he has had no meaningful work since mid-November 2011, despite the fact that he had no role whatsoever in the fraudulent conduct now under investigation. His only action in connection with that conduct

was to try to encourage the College to make the victims whole and make an appropriate disclosure to the government. Those actions were protected activities under the False Claims Act, and any retaliatory actions by the College because of these protected activities were and are unlawful. The College's stripping of Mr. Berman of his title and his work has been both personally demeaning and professionally damaging, and his prospects for obtaining future employment in his chosen field have been compromised.

## CLAIMS FOR RELIEF

### COUNT ONE

#### False Claims Act – False Claims and False Statements

#### 31 U.S.C. § 3729(a)(1)(A)

31.    Plaintiff/Relator and the United States reallege and incorporate by reference each and every one of the foregoing paragraphs as if fully set forth herein.

32.    Since approximately 2002, Defendant Merrimack College knowingly presented or caused to be presented false or fraudulent claims to the United States Department of Education in connection with false Perkins student loan applications, and the government. As a result of these illegal schemes, these claims were improper in whole pursuant to 31 U.S.C. § 3729(a)(1)(A)-(B).

33.    The Department of Education, and/or its contractors, carriers, intermediaries and agents, paid and approved claims for payment that should not have been paid or approved.

34.    Defendants, through the means described above, deliberately and intentionally concealed material information, including the false and fraudulent nature of the claims, from officials with the Department of Education and/or their contractors, carriers, intermediaries and agents, in order to induce payment of the false and fraudulent claims.

35. The government, and/or its contractors, carriers, intermediaries and agents, would not have paid the claims had it known the truth – that the underlying documentation of the Perkins loan documents in the form of promissory notes contained forged signatures and misused Social Security numbers and that the students in question were unaware of the fact that they were incurring a debt.

36. By reason of the above-described actions and the presentment of false or fraudulent claims, the United States has suffered significant losses in an amount to be determined at trial.

## COUNT TWO

### Violations of the Federal False Claims Act, 31 U.S.C. §3729(a)(1)(B)

### Creation or Use of False Statements or Records Material to a False or Fraudulent Claim

37. Plaintiff/Relator and the United States reallege and incorporate by reference each and every one of the foregoing paragraphs as if fully set forth herein.

38. This is a claim brought by Plaintiff and the United States to recover treble damages, civil penalties and the cost of this action, under the Federal False Claims Act, 31 U.S.C. § 3730 for Defendant's violations of 31 U.S.C. §§ 3729 *et seq.*

39. The Federal False Claims Act, 31 U.S.C. § 3729(a)(1)(B), makes liable:

"Any person who--

(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim…"

*Id.*

40. By virtue of the above-described acts, among others, Defendant Merrimack knowingly made used or caused to be made or used false records or statements material to false

- 12 -

or fraudulent claims to the United States, and on information and belief continues to do so, in

violation of 31 U.S.C. § 3729(a)(1)(B).

41.    For those records and/or statements that Defendant made or used or caused to be

made or used, it was foreseeable and in fact the intended result that those statements and/or

records would be used in a way material to a claim to the United States.  Further, at all times

relevant hereto, Defendant acted with the requisite scienter.

42.    As a result of Defendant's violations of 31 U.S.C. § 3729 (a)(1)(B), the United

States is entitled to treble damages for its losses under the False Claims Act, to be determined at

trial, plus a civil penalty of $5,500 to $11,000 for each such false record and/or statement made

or used or caused to be made or used by Defendant.

## COUNT THREE

### Violations of the Federal False Claims Act, 31 U.S.C. §3729(a)(1)(G)

**Making, Using or Causing to be Made or Used, a False Record or Statement Material to an Obligation to pay or Transmit Money or Property to the United States or  Concealing, Improperly Avoiding or Decreasing an Obligation to Pay or Transmit Money or Property to the United States**

43.    Plaintiff/Relator and the United States reallege and incorporate by reference each

and every one of the foregoing paragraphs as if fully set forth herein.

44.    This is a claim brought by Plaintiff and the United States to recover treble

damages, civil penalties and the cost of this action, under the Federal False Claims Act, 31

U.S.C. § 3730, for Defendant's violations of 31 U.S.C. §§ 3729 *et seq.*

45.    The Federal False Claims Act, 31 U.S.C. § 3729(a)(1)(G), makes liable

"Any person who--

(G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly

> avoids or decreases an obligation to pay or transmit money or property to
> the Government ..."

*Id.* The term "obligation" means:

> "an established duty, whether or not fixed, arising from an express or
> implied contractual, grantor-grantee, or licensor-licensee relationship,
> form a fee-based or similar relationship, from statute or regulation, or
> from the retention of any overpayment..."

31 U.S.C. § 3729(b)(3).

46.     By virtue of the above-described acts, among others, Defendant Merrimack

knowingly made, used, or caused to be made or used false records or statements, and knowingly

concealed its obligations, and on information and belief continues to do so, in violation of 31

U.S.C. § 3729(a)(1)(G).

47.     As a result of Defendant's violations of 31 U.S.C. § 3729 (a)(1)(G), the United

States is entitled to treble damages for its losses under the False Claims Act, to be determined at

trial, plus a civil penalty of $5,500 to $11,000 for each such false record and/or statement made

or used or caused to be made or used by Defendant.

## COUNT FOUR

## RETALIATION UNDER THE FCA, 31 U.S.C. § 3730(h)

48.     Plaintiff/Relator and the United States reallege and incorporate by reference each

and every one of the foregoing paragraphs as if fully set forth herein.

49. Section (h) of the 31 U.S.C. Section 3730 provides in pertinent part as follows:

> "Any employee who is discharged, demoted, suspended,
> threatened, harassed, or in any other manner discriminated against
> in the terms and conditions of employment by his or her employer
> because of lawful acts done by the employee or other in
> furtherance of an action under this section, including investigation
> for, initiation of, testimony for, or assistance in an action filed, or
> to be filed under this section, shall be entitled to all relief necessary
> to make the employee whole."

- 14 -

50.     Defendant Merrimack has demoted, harassed, and discriminated against

Mr. Berman in the terms and conditions of his employment because of lawful acts done by him

in investigating fraud against the government. Mr. Berman has been damaged as a direct result

of these illegal actions. He has suffered emotional harm by being stripped of his responsibilities

and any meaningful work, and his career has been impacted because of the restrictions on his

professional mobility caused by the College's actions. Moreover, should the College follow

through on its current threat of terminating his employment, Mr. Berman will suffer additional

economic and emotional injuries, compensable under the statute.


## **PRAYERS FOR RELIEF**

WHEREFORE, Relator Douglas Berman, acting on behalf of and in the name of the

United States of America and on his own behalf, demands and prays that judgment be entered as

follows against the Defendant under the Federal FCA as follows:

(a)     In favor of the United States against the Defendant for treble the amount of

        damages to the government from the fraudulent submission of false Perkins

        student loans and misused Social Security numbers, plus maximum civil penalties

        of Eleven Thousand Dollars ($11,000.00) for each violation of the FCA;

(b)     In favor of the United States against the Defendant for disgorgement of the profits

        earned by Defendant as a result of its illegal scheme;

(c)     In favor of the Relator for the maximum amount allowed pursuant to 31 U.S.C. §

        3730(d) to include reasonable expenses, attorney fees and costs incurred by

        Relator;

(d)     For all costs of the Federal FCA civil action;

(e)     In favor of the Relator and the United States for such other and further relief as this Court deems to be just and equitable;

(f)     In favor of Relator against Defendant under Count Four for all available damages and relief under 31 U.S.C. § 3730(h), including, without limitation, two times back pay plus interest (and prejudgment interest) should his position be terminated, reinstatement or in lieu thereof front pay, and compensation for any special damages, and litigation costs, and attorneys' fees; and

(g)     Such other relief as this Court deems just and appropriate.

## PLAINTIFF/RELATOR DEMANDS A TRIAL BY JURY ON ALL COUNTS

Dated:  April 26, 2012                        Respectfully submitted,


Robert M. Thomas, Jr.
THOMAS & ASSOCIATES
280 Summer Street, 5th Floor
Boston, MA 02210-1131
(617) 371-1072
Fax: (888) 676-7420
Email: rmt@thomasandassoc.net

Suzanne E. Durrell
DURRELL LAW OFFICE
180 Williams Avenue
Milton, Massachusetts 02186
(617) 333-9681
Fax: (617) 333-0014
Email: suzanne.durrell@verizon.net